VOSE v. UNITED STATES METAL PRODUCTS CO.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 159.

1. PATENTS ☞328—INFRINGEMENT—WEATHER STRIPS.
    The Vose patent, No. 717,641, for improvements in weather strips, strictly construed, as it must be in view of the prior art, *held* not infringed.

2. PATENTS ☞202—ASSIGNMENT—SCOPE.
    An assignment of patents, for which the assignor is "about to make application," with a request to the Patent Office to issue such patents "when granted" to the assignee, *held* not to include a patent previously issued to the assignor, but not mentioned in the assignment.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. ☞202.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here on appeal from a decree of the District Court, Eastern District of New York, in favor of complainant. The suit was brought for alleged infringement of United States letters patent No. 717,641, issued January 6, 1903, No. 752,729, issued February 23, 1904, and No. 814,893, issued March 13, 1906. All three of them cover "improvements in weather strips" and were issued to Clifton Vose; his mother, the complainant, claims to be the assignee of each patent. The opinion of the District Court will be found in 216 Fed. 775.

D. W. Cooper, of New York City, for the appellant.
H. B. Philbrook, of New York City, for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The District Court was manifestly in error in including in the decree a finding that patents No. 752,729 and No. 814,893 "appear presumptively to be good and valid in law." Both of these patents were withdrawn from consideration of the court by complainant; it being stated that no claim of infringement of either of them was made.

[1] As to No. 717,641: The two claims read as follows:

"(1) In a window, the combination of a casing provided with grooves or tracks, a sash adapted to move within said grooves or tracks, angle-shaped strips secured in rabbets on the sides of the sash-frames and extending over the outer portions of the same, and means consisting of strips located in said grooves or tracks and extending between the angle-shaped strips and the sash, substantially as and for the purposes set forth.

"(2) In a window, the combination of a casing provided with grooves or tracks, a sash adapted to move within said grooves or tracks, angle-shaped strips secured to said sash, and unbent flat strips located in said grooves or tracks and forming bearing-surfaces for said sash, one portion only of said strips in the grooves being affixed to the casing, the free portion being adapted to co-operate with the angle-shaped strips to form a substantially dust-proof joint between the sash and casing, substantially as and for the purposes set forth."

From the patents put in evidence it is manifest that the art was a narrow one, admitting no broad range of equivalents, and requiring that specific limitations introduced as amendments to original claims should be given full force and effect.

The two metal strips, whose interlocking prevents the entrance of air and dust, are one of them flat, the other bent at a right angle; the flat one moving in the space between one flange of the angle-strip and the sash frame to which it is attached. The specification, which was practically unchanged from its original form, states that the flat strip is secured to the jamb at a point remote from the place where it engages with the other strip. Being thus fastened at that one point only it is in a measure "resilient" and "able to accommodate itself to the irregularities of movement of the sash." The specification further states that, as shown in the drawings, this flat strip is applied to the window with a thin lath of wood upon the jamb which necessarily leaves a space equal to the thickness of the thin lath between the free end of the strip and the jamb. It further states that the lath may not be always found necessary in actual practice, because the strip, being flexible, will accommodate itself to the movements of the flange with which it engages. As to the angled-strip $F$ the specification says:

"The sash-bar is provided with a shallow rabbet cut along and inward in the plane of the sash-bar and registering with the outer edge thereof."

One flange of the angled-strip "is secured to the plane of the sash-bar and in the rabbet; the other flange extending beyond the outer edge of the sash-bar and inward to form a narrow groove or passage between itself and the sash-bar," through which groove the jamb strip plays.

The original claims included the method of affixing the flat strip at one point only, so located as to secure its resilience and also the rabbet cut on the sash for attachment of the angled-strip. These original claims were rejected on a reference to Hedberg patent 626,492, which

showed devices for use upon the upper and lower parts of such frames. The claims were then rewritten, making them quite clearly applicable to the parts of the sash-frames which move up and down. These claims refer to one of the engaging strips "being yielding in respect to the frame to which it is secured, whereby it may yield to maintain its proper relation to the other" strip—a somewhat awkward way of expressing its resilience. These new claims omitted all reference to the rabbet in which the angled-strip was placed.

These claims were again rejected; the Office citing, not only Hedberg, but also Nicol 601,081, Horsfield 632,922, and Lane 637,623. Examination of these four patents shows a great variety of methods for arranging metal strips, variously bent, so that they would interlock or press against each other and thus exclude air and dust. Another patent, Golden 263,365, not cited by the Patent Office, shows still another variety of bending and engagement.

The patentee thereupon again amended his claims, reducing them to two, phrased as they now stand in the patent. The first of these claims expressly states that the angle-shaped strips are "secured in rabbets" on the side of the sash. Inasmuch as the specifications expressly refer to this method of securing them and the claim makes such method of securing them an element, the natural construction of the claim would indicate that these words implied a limitation. It would have been so easy to have phrased the claim so as to state merely that the angled-strips were secured to the sash in such a way as to leave a passage for the other strip to play in, that the use of this narrower statement would seem to mean something. It is suggested that mere mechanical skill would indicate that an equally efficient structure could be made by affixing the strip to the sash without a rabbet. That is true enough, there would be no patentable invention in dispensing with the rabbet. But that does not dispose of the matter. The prior art was a crowded one filled with devices which it would seem mere mechanical skill, without any exercise of the inventive faculties, might easily have produced. That this patent discloses any invention over the prior art is very doubtful. Certainly if it does (and we do not now pass on that question) the claims must be closely restricted within the limits the patentee has himself imposed.

The second claim states that the jamb strip is "flat" and "unbent." This accords with the specifications which indicate two ways only in which a passageway for the engaging strip or flange is secured, viz., the thin lath, or the natural resiliency of the flat strip secured only at its further end. Certainly it would involve no invention to secure such passageway by bending the flat strip as defendant has. Indeed, precisely such a way of bending to accomplish just such a purpose is shown in Horsfield 632,922, Fig. 3. Mere mechanical skill would suggest such a change, but a strip thus bent would not be within the language of the claim. Had the patentee stated merely that the strips affixed to the casings were "flat," that word could fairly be interpreted as meaning only that they were not "angled" as were the other strips. In one of the rejected claims patentee describes these casing strips as "adapted to co-operate with said angle-strips"—an adaptation which

might be secured, not only as he showed by mere resiliency or by off-setting by a thin lath, but also by bending. When upon rejection of that claim he amended so as to state that this strip element of his claim was not only "flat," but also "unbent," such language cannot be extended to cover strips that are *bent* to secure passageway.

[2] Although we have thus discussed the scope of the patent in connection with the alleged infringement, we are clearly of the opinion that assignment of 717,641 by the patentee to complainant is not proved. Except for a statement in her own handwriting added long after the execution of the instrument, the assignment contains no reference to this patent. On the contrary, its language plainly indicates that it did not cover this patent. It recites that Clifton Vose has made certain new and useful improvements in weather strips, for which he is "about to make application for letters patent." It assigns full and exclusive right to all the improvements made by me, as fully set forth and described in the "specifications which I have prepared and executed, *preparatory* to the obtaining of letters patent therefor." It provides that the same may be held and enjoyed by the assignee "to the full end of the terms for which said letters patent *may be* granted," and requests and authorizes the Commissioner of Patents to issue said letters patent, "when granted" to the assignee.

This assignment was executed by Clifton Vose on April 8, 1903. But application for patent 717,641 was filed December 6, 1901, and the patent issued January 6, 1903. Manifestly the assignment covers some "new and useful improvements" other than those for which he had obtained a patent three months before.

The decree is reversed, with costs.