BURGESS BATTERY CO. v. SOLAR LIGHT CO. (HEINRICH ELECTRIC
NOVELTY CO., Intervener).

(Circuit Court of Appeals, Second Circuit. March 3, 1920. On Motion for
Rehearing, April 12, 1920.)

No. 161.

1. **Corporations 616—In view of statute providing for settlement of affairs of dissolved corporation by directors, president was without power to convey property.**

    Under Act April 21, 1896 (P. L. N. J. p. 295), § 54, providing that on dissolution of a corporation its directors shall be trustees to settle its affairs, with power to sell and convey its property, where the charter of a corporation had been declared repealed by the Governor pursuant to statute, a subsequent assignment of a patent by its president, purporting to act in its behalf, *held* void, and the assignee *held* chargeable with notice of its invalidity.

2. **Patents 202(2)—Assignee by unrecorded assignment entitled to show invalidity of subsequent assignment.**

    Where a corporation had sold and assigned a patent, but the assignment had not been recorded, the assignee, as equitable owner, *held* entitled to show that a subsequent assignment by its president after its dissolution was void.

3. **Patents 328—774,749, for portable electric light, valid and infringed.**

    The Gill patent, No. 774,749, for a portable electric light, *held* not anticipated, valid, and infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Burgess Battery Company against the Solar Light Company, wherein the Heinrich Electric Novelty Company intervened. Decree for complainant, and defendant and intervener appeal. Modified, by directing decree for intervener.

William F. Nickel and Drury W. Cooper, both of New York City, for appellant Solar Light Co.

Wood, Cooke & Seitz, of New York City, for appellant intervener.

Pennie, Davis, Marvin & Edmonds, of New York City (Arba B. Marvin and W. B. Morton, both of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. [1] The first question which arises is as to title, viz. whether the patent belongs to the plaintiff Burgess Company, or to Heinrich Electric Novelty Company, which has been permitted to intervene.

November 15, 1904, letters patent 774,749, for a portable electric light, issued to Edwin R. Gill, assignor, to Electric Contract Company, a corporation of New Jersey. March 16, 1907, the Electric Contract Company assigned the patent to Gustav P. Heinrich. April 7 Heinrich assigned it to the Heinrich Electric Novelty Company. These two assignments were not recorded, and are therefore void as against any assignee from the company who was a bona fide purchaser without notice.

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

January 6, 1909, the Governor of New Jersey by proclamation (P. L. N. J. 1909, p. 557) in accordance with chapter 187, Laws of 1896, and chapter 259, Laws of 1905, declared the charter of the Electric Contract Company to be repealed. In 1909 Armstrong, who had been president of the company, paid its debts and became its only creditor. February 26, 1918, Armstrong, as president, assigned the patent to Edwin R. Gill. March 6, 1918, Gill assigned it to Warren D. House. March 9, 1918, House assigned it to the plaintiff, Burgess Battery Company.

March 4, 1919, the Burgess Battery Company filed this bill against the Solar Light Company for infringement. April 5, 1919, the Solar Light Company answered. July 3, 1919, the cause came on for trial, and the Heinrich Electric Novelty Company was allowed to intervene and claim ownership of the patent; the rights of the parties generally to be settled in this suit.

The District Judge said as to the assignment by Armstrong in the name of the Electric Contract Company:

"In my judgment, under Armstrong's testimony he had the full control of all the property of this concern. Now, of course, this was not property of the concern, because it had already been disposed of in any strict sense of the word. The power of disposition of any thing that belonged to the concern was really in Armstrong. He was the equitable owner of the property. He was the president; had been the president. As far as anybody had any authority, he had the authority to dispose of it in winding it up. It was within the power of the corporation. Even though it was defunct, it had something over which it had control. There was property right to it. It is true it is a wrongful act to sell it after it had been disposed of before, but that is a matter for the state to deal with; that is not a question that is to be considered in this connection, in my judgment. I do not think that the fact that the company had been proclaimed defunct, non-existing, would affect the prima facie right of the president in the winding up to dispose of it; at least not as to third persons, and at least not as against other third persons claiming rights. Prima facie possession rests in them. It may be subject to defeasance by the corporation, by the state; but I do not think the transaction is a nullity."

This amounts to saying that by paying the company's debts Armstrong became the equitable owner of the company's property. Assuming this to be so, he did not become owner of this patent, because it belonged to the Heinrich Novelty Company, and Armstrong at that time knew it. Paying the company's debts did not make him the company, or give him any authority to act for the company, which he did not otherwise have. When Armstrong made the assignment, the company, if it existed at all, existed only to be wound up for the benefit of creditors under section 54 of the act of New Jersey of April 21, 1896 (Session Laws, page 295), which reads:

"Upon the dissolution in any manner of any corporation the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts, as far as such moneys and properties shall enable them; they shall have power to meet and act under the by-laws of the corporation and, under regulations to be made by a majority of said trustees, to prescribe the terms and conditions of the sale of such property, and may sell all or any part for cash, or partly on credit, or take mortgages and bonds for part of the purchase price for all or any part of said property."

If Armstrong remained president of the company for 11 years after its charter was repealed, the directors also remained directors, and no reason appears why the statute should not have been complied with.

[2] It is insisted that only the company or its stockholders can object and that the Heinrich Company has no standing to do so. If the Electric Contract Company had any interest which was affected by the assignment to Gill, this would be so; but neither it nor its stockholders had any such interest. The Heinrich Company, which is injured, should be allowed to show, if it can, that Armstrong's assignment is invalid. To deny this right on the ground that the Electric Contract Company, which has no interest whatever, does not complain would be inequitable in the highest degree.

The president of the company has, as such, no right to sell the company's property. Cook on Corporations, § 716:

"*President—His Power to Contract for the Corporation.*—The president of a corporation has no power, by reason of his office alone, to buy, sell, or contract for the corporation, nor to control its property, funds, or management. His duty is merely to preside at meetings of the board of directors, and to perform only such other duties as the by-laws or resolution of the board of directors may expressly authorize. This is a rule established by the great weight of authority.

"The board of directors may of course expressly authorize the president to contract; or his authority to contract may arise from his having assumed and exercised that power in the past; or the corporation may ratify his contract or accept the benefits of it and thereby be bound. But the general rule is that the president cannot act or contract for the corporation any more than any other director. This question has frequently been before the courts, and many decisions have been rendered in regard to it. A large number of the cases are given in the notes below.

"The question seems to have arisen in many forms, and the great weight of authority holds that a president has no inherent power to represent or contract for the corporation. His duties are confined to presiding and to voting as a director. The fact, however, that he is almost always the corporate officer who is directed to sign the corporate contracts that have been authorized by the board of directors has led to an enlargement of his importance as a corporate officer. Hence the rule has arisen in New York that a contract, which apparently is a corporate contract, being signed by the president, is presumed to be a corporate contract until the want of authority of the president is shown by the corporation. * * *"

Accordingly, when the Burgess Company took title to the patent, depending on Armstrong's assignment as president of record in the Patent Office, it took the risk of his authority to make it. There was nothing whatever to show such authority, except his own statement to that effect in the acknowledgment. We think the assignment was a nullity.

But, if the assignment were to be held merely voidable, it seems to us that the Burgess Company was put upon inquiry so as not to be without notice. These facts were disclosed by Gill to Mr. Marvin, who was attorney for both House and the plaintiff, viz.: That Armstrong said he owned the patent, that no papers could be found, that there was no corporate seal to put on the assignment, and that the company had been out of business a long time. The least examination would have shown that Armstrong, as president, had no authority to make the assignment, because there had been no meetings of the board of

directors since 1907, and there could have been no resolution authorizing him to make the assignment.

[3] Coming to the merits: Only claim 4 is in issue, which reads:

"In a portable electric light, a lamp-supporting head having a concave reflecting top and a lamp socket therein a removable thrust block fitting within said head and against said reflecting top, an aperture in said block, a lamp fitting in said socket and into said aperture, and a spring carried by said block adapted to press against one terminal of said lamp."

The specification (lines 75–90) explains the purpose, as follows:

"As shown in Fig. 1, when the spring 17 has been flattened to a certain point by pushing home the battery cells, the edge of the top cell comes against the under side of the block 15, and further compression of the spring 17 is thus prevented. This provision accomplishes two objects. It prevents the possibly excessive compression of the spring 17 from injuring the battery cells by pushing in the carbon electrode, and it prevents the full pressure of the confined cells from being brought under circumstances of excessive strain upon the lamp terminal."

We agree with the District Judge that Gill did make an invention, viz. a shock absorber for portable electric lights by means of a thrust block around the fragile lamp, which would transmit any shock to the casing, and so save the lamp. This was not anticipated by any patent cited. The two chiefly relied upon by the plaintiff are Vetter and Fenner. In Vetter any shock would be transmitted to a helical spring, and from it, if violent enough, directly to the bottom of the lamp; there being no thrust block to transmit the shock to the casing. Fenner does not carry the batteries in a cylinder with the lamp, and neither the specification nor claims describes a shock absorber device.

As to infringement, the defendant accomplishes exactly the same results with differences which are equivalents. It has a helical spring, instead of the flat spring. Its lamp-supporting head is in two portions, instead of one, held in place by the lens and its attaching rings; no new result being obtained. It has in place of the patentee's block a metal cylinder, which transmits any shock to the casing around the lamp, just as the patentee's thrust block does.

The court below is directed to enter a decree in favor of the intervener, the Heinrich Electric Novelty Company, instead of the Burgess Battery Company, and, as so modified, the decree is affirmed.

## On Motion for Rehearing.

PER CURIAM. The court below found that the patent was valid and infringed, and that the Burgess Battery Company, plaintiff, was the owner of it. We affirmed the decree, except as to title, holding the patent belonged to the Heinrich Electric Novelty Company, and not to the plaintiff.

At the trial all parties agreed that the Heinrich Company might intervene. Regular practice required that it should define the purposes of its intervention, either in a bill or in an answer. This, however, was waived, and the order for intervention entered upon consent of the parties in the course of the trial prescribed that the order should "have the same force as if the said Heinrich Electric Novelty Company

upon such intervention had served upon the parties hereto an answer or other pleading herein." Now, either an answer or a bill filed by the intervener would certainly have been to the effect that the patent was valid and infringed as against the defendant, and that the intervener was the owner of the patent as against the plaintiff. We must give to these informal proceedings the effect which the parties intended them to have. That effect, we think, was that all questions between them should be settled in one suit. As evidence of this on the part of the defendant, Solar Light Company, it may be noted that it offered in evidence the assignments of the patent to the intervener, and its brief in this court concluded with language which shows that it expected all disputes to be settled in this cause:

"If the patent were valid, and if the defendant has infringed it, it would nevertheless be entitled to have this suit dismissed upon the ground of a manifest defect in title. Notwithstanding that defect, however, since both the parties in question have joined in the attack upon the defendant, it is promotive of justice to have the merits of the case, which are plain, adjudicated in favor of the defendant, so that it may not hereafter be subjected to a second suit by other claimants under the patent. This course was taken in this court in a similar situation, in Vose v. U. S. Metal Products Co., 219 Fed. 747, at page 750, 135 C. C. A. 445."

The court below is directed to enter a decree that the patent is valid and infringed by the defendant, and that the Heinrich Electric Novelty Company is the owner of it, entitled to an interlocutory decree for an injunction and accounting against the defendant, with half costs of both courts to the defendant against the plaintiff, the Burgess Company.

Motion denied.