**In re Jacob F. BUTCHER, a/k/a Jake F. Butcher and Jake Butcher, Debtor.**

**John H. BAILEY, III, Trustee, Plaintiff,**

**v.**

**EAGLE ENERGY, INC., Federal Deposit Insurance Corporation, and Marie S. Wilde, Trustee, Defendants.**

Bankruptcy No. 3–83–01036.

Adv. P. No. 3–84–0027.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 17, 1985.

Bass, Berry & Sims, J.O. Bass, Jr., Wallace W. Dietz, Nashville, Tenn., for plaintiff.

Morton, Lewis, King & Krieg, John M. Neal, Knoxville, Tenn., for defendant Federal Deposit Ins. Corp.

Troutman, Sanders, Lockerman & Ashmore, Bruce W. Moorehead, Jr., Atlanta, Ga., for defendants Eagle Energy, Inc. and Marie S. Wilde.

## MEMORANDUM AND ORDER ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

CLIVE W. BARE, Bankruptcy Judge.

At issue is the validity of a prepetition transfer of debtor's interest in a condominium to a corporation whose charter was revoked at the time of the transfer but reinstated postpetition. Tenn.Code Ann. § 67–4–917 (1983). Also in question is whether the corporation's subsequent mortgagee accepted a mortgage against the condominium in good faith, precluding recovery by the bankruptcy trustee of the condominium, or its value, from the mortgagee or its transferee, assuming arguendo the prepetition transfer to the corporation was either fraudulent or preferential. 11 U.S.C.A. § 550(b) (1979).

### I

An involuntary chapter 7 proceeding, 11 U.S.C.A. § 303 (1979), was commenced against the debtor on June 29, 1983. An Order for Relief was entered on August 22, 1983.

More than three years prior to bankruptcy, on February 7, 1980, the debtor and defendant Marie Wilde entered into a revocable trust agreement. The corpus of the trust was a condominium in Key Biscayne, Florida, that the debtor acquired contemporaneously with the creation of the trust. Title to the condominium was transferred to Wilde as trustee for the benefit of the debtor, his heirs, successors and assigns. On June 14, 1983, only fifteen days before commencement of the involuntary bankruptcy proceeding, the debtor quitclaimed his interest under the revocable trust agreement to Eagle Energy, Inc. (Eagle). The consideration for debtor's transfer was $490,000.00 previously advanced to him by Eagle on September 30, 1981. Eagle and Wilde executed an agreement on June 20, 1983, purportedly revoking the revocable trust agreement. Also on June 20, 1983, at Eagle's direction, Wilde executed a warranty deed conveying the Florida condominium to Eagle. This deed was recorded on June 21, 1983, in Dade County, Florida.

Eagle is the payor on a renewal note, in the principal amount of $490,000.00, held by United American Bank of Knoxville (UAB) when that bank failed in February 1983. (The indebtedness originated on or about September 30, 1981, when Eagle borrowed $490,000.00 from, and executed its note in favor of, United American Bank of Chattanooga.) The renewal note was past due, having matured on December 24, 1982. First Tennessee Bank (FTB) acquired the Eagle note pursuant to its purchase agreement with the Federal Deposit Insurance Corporation (FDIC), receiver for UAB. No payment had been made against the principal as of May 1983, when Eagle's representatives met with FTB representatives to discuss the indebtedness. During this meeting Eagle offered FTB a mortgage against the condominium in question as collateral for its debt to FTB. This offer was accepted by FTB. However, the promised mortgage was not executed until August 18, 1983. FTB recorded this mortgage on September 2, 1983.

On January 31, 1984, the trustee for the debtor's estate filed a complaint naming Eagle, FTB, and Marie Wilde as defendants. The object of the complaint is to recover the condominium, or its value, for the estate.[1] The FDIC, in its corporate capacity, acquired the Eagle note from FTB pursuant to an agreement dated August 8, 1984. Accordingly, FDIC has been substituted as a defendant in place of FTB.

### II

Asserting two separate theories, the trustee has filed a motion for summary judgment. Initially, because Eagle's corporate charter was revoked prior to the conveyance to it, the trustee contends the con-

---

**1.** An agreed order providing for the sale of the condominium at a price of $350,000.00 was entered on June 4, 1984. The order further provides for deposit of the sale proceeds in an interest-bearing account, pending determination of the parties' rights. No report of sale has been filed with the court.

dominium was property of the estate when the involuntary petition was filed. The trustee thus believes he either is entitled to turnover of the condominium pursuant to 11 U.S.C.A. § 542 (1979) or that his rights under 11 U.S.C.A. § 544 (1979) are superior to those of either Eagle or FDIC.

Tenn.Code Ann. § 67–4–917 (1983) enacts in material part:

*Revocation of charter for nonpayment —*

(a) The commissioner of revenue is empowered to certify to the secretary of state the name of any corporation which fails or refuses ... to pay any fee or tax herein required, however, no certification shall be issued until such ... tax has remained delinquent for a period of ninety (90) days.

(b) At the time of such certification to the secretary of state, the commissioner of revenue shall give notice to the corporation of the action taken. Thereupon the charter of such corporation or its domestication in Tennessee shall stand as automatically revoked and the secretary of state shall note such revocation upon his records.

(c) At any time after date of revocation such charter may be reinstated upon the filing of all reports and the payment of all fees, taxes, penalty and interest due the state ... provided that proof be furnished sufficient to the commissioner that no third party will be injured by such reinstatement.

Eagle's corporate charter was revoked on June 2, 1983, for nonpayment of franchise tax. The charter was not reinstated until a date subsequent to July 17, 1984.

■ The trustee cites the general rule that a deed is void unless a grantee has legal existence. 26 C.J.S. *Deeds* § 13 (1956). Because Eagle's corporate charter had been revoked previous to conveyance to it of the condominium, the trustee contends the prepetition deeds to Eagle from the debtor and Marie Wilde are void. The court disagrees. A conveyance to a defunct corporation is analogous to a conveyance to a decedent. The death of a grantee previous to execution and delivery of a deed does not necessarily nullify the conveyance; equity will treat the deed as a conveyance to the decedent's estate. *Fidelity Securities Co. v. Martin*, 117 Wash. 323, 201 P. 301 (1921). Even though its corporate charter had been revoked, the debtor's quitclaim deed and Wilde's warranty deed effectively transferred the condominium to Eagle's shareholders, subject to corporate creditors' claims. *See Jesse A. Bland Co. v. Knox Concrete Products, Inc.*, 207 Tenn. 206, 338 S.W.2d 605 (1960) (property of defunct corporation passed to sole shareholder subject to unpaid creditors' claims). The debtor intended to, and did, divest himself of any interest in the condominium before the involuntary bankruptcy proceeding was commenced.

■ Alternatively, absent injury to the rights of third parties, reinstatement of Eagle's corporate charter validates otherwise legal transactions occurring in the interim between revocation and reinstatement of the charter. *Kerney v. Cobb*, 658 S.W.2d 128, 131 (Tenn.App.1983), *cert. denied*. The trustee's rights are not impaired nor injured by giving effect to the prepetition deeds to Eagle. A deed conveying the condominium to Eagle was a matter of record when the involuntary petition was filed. Hence, the condominium was not property of the estate on the petition date. Also, the trustee's rights under § 544(a) are not superior to the claim of Eagle and its grantees, because the deed from Wilde conveying the condominium to Eagle was recorded prepetition. Equitably, a corporation whose charter is revoked for a temporary failure to pay a state tax should not be penalized by advancing the priority of a competing lien creditor's interest.

Under his second theory for recovery, the trustee contends the transfer to Eagle of the condominium is voidable as either

preferential or fraudulent and that he is entitled to recover the condominium or its value, pursuant to 11 U.S.C.A. § 550 (1979), from both Eagle and FDIC. The voidability of the prepetition transfer to Eagle is assumed for the present purpose of determining whether the trustee may be entitled to recover from FDIC under Code § 550.[2]

Bankruptcy Code § 550 enacts in relevant part:

*Liability of transferee of avoided transfer*

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 ... 547, 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee....

Since it received the Eagle mortgage to secure an antecedent debt, FTB clearly took "for value" within the meaning of the statute. In a brief supporting his motion for summary judgment the trustee appears to concede that FTB did not have, and is not charged with, knowledge of the voidability of the transfer to Eagle, which is not yet established.[3] The question remains whether FTB acted in good faith when it accepted Eagle's mortgage.

Kathryn Dempster, a vice-president in commercial lending, was assigned the responsibility of collecting the Eagle debt to FTB. Dempster and other bank officials attended the May 1983, meeting with Eagle's representatives to discuss the default on Eagle's $490,000.00 note. As previously noted, at this meeting FTB accepted Eagle's offer to collateralize its debt with a mortgage against the controverted condominium. Dempster did not inquire about how Eagle had acquired the condominium. But, she was told during the meeting that Eagle had acquired the condominium with the loan proceeds received in exchange for its $490,000.00 note. Because the Eagle mortgage was to secure a loan already in default, FTB accepted the mortgage without obtaining an appraisal, a title examination, or title insurance. According to Dempster, since FTB anticipated Eagle might be placed in bankruptcy, FTB decided to wait ninety days from the perfection of its interest before expending any bank funds in connection with the condominium.

A delay of approximately three months occurred in the delivery of the Eagle mortgage, which was not executed until August 18, 1983. During the delay Dempster had one conversation about the proffered mortgage with Eagle's attorney; he advised her some complication had arisen but that the mortgage would be forthcoming. Oddly, Dempster did not inquire about the nature of the complication.

The mortgage to FTB does not contain a derivation clause identifying Eagle's grantor (of the condominium). Prior to accepting the mortgage, Dempster did not know that the debtor had owned and transferred the condominium to Eagle.

The trustee insists that FTB could not "close its eyes, take the mortgage for whatever it might be worth, and still fall within the good faith requirement of § 550(b)(1)."[4] He asks the court to hold as

---

**2.** The mortgage debt against the condominium exceeds its value. Eagle is reportedly insolvent. Unless the trustee is entitled to recover from FDIC, his cause of action may be worthless.

**3.** See note 2, *supra,* and accompanying text.

**4.** Brief in Support of Trustee's Motion for Summary Judgment at 9.

a matter of law that a bank taking collateral, or additional collateral, on a defaulted loan without any inquiry fails to meet the good faith requirement of § 550(b)(1). Noting the trustee concedes FTB did not accept the mortgage in bad faith,[5] FDIC contends if FTB was not acting in bad faith then it must have been acting in good faith.

"Good faith" is not defined in the Bankruptcy Code. Congress apparently believed it would be best for courts to determine on a case-by-case basis whether the standard of good faith, required under several Code provisions, is satisfied. The legislative history accompanying § 550(b) does mention "good faith," reciting in part:

> The phrase "good faith" in this paragraph is intended to prevent a transferee from whom the trustee could recover from transferring the recoverable property to an innocent transferee, and receiving a retransfer from him, that is, "washing" the transaction through an innocent third party.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 376, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6332.

■ Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This court declines to adopt the per se rule advocated by the trustee, choosing instead to resolve questions of "good faith" on a case-by-case basis after determining all material facts. Furthermore, the present record does not warrant finding a lack of good faith on the part of FTB. Accordingly, assuming arguendo the voidability of the prepetition transfer to Eagle, the trustee is not clearly entitled to judgment, as a matter of law, allowing recovery from FDIC, the FTB successor in interest.

The trustee's motion for summary judgment is DENIED in its entirety.

IT IS SO ORDERED.