J. B. WOLFE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEON SAL-KIND ET AL., DEFENDANTS-APPELLANTS.

Argued December 5, 1949—Decided December 19, 1949.

314

*Mr. Sydney I. Turtz* argued the cause for the appellants (*Mr. Theodore Cohen,* attorney).

*Mr. Abraham J. Slurzberg* argued the cause for the respondent (*Mr. John J. Fallon,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. The defendants appealed to the Appellate Division of the Superior Court from a judgment of the Hudson County Court rendered upon a jury verdict in favor of the plaintiff for $5,000 plus interest. We have certified the cause on our own motion for argument and decision here.

The suit was brought for the recovery of a broker's commission on an oral contract made on December 20, 1947, whereby the defendants agreed to pay the plaintiff a commission of five per cent. if it would obtain a purchaser for three designated embroidery machines and accessories for $100,000. Prior to the trial of the case the defendants moved for summary judgment on the ground that the corporate charter of the plaintiff was forfeited on January 8, 1941, by proclamation of the Governor for nonpayment of state franchise taxes before the suit was started on January 8, 1948. It was shown, however, by an answering affidavit that the plaintiff had been reinstated as a corporation on March 22, 1949, prior to the argument on the motion, and the trial court accordingly denied the motion holding that "the acceptance by the State of the stipulated sum in lieu of taxes and penalties and the consequent reinstatement of the corporate charter validates the exercise of the corporate franchise."

At the trial the president of the plaintiff corporation established the contract on which suit was brought, and further testified that the defendant, Leon Salkind, went with him into the defendants' plant and there wrote out a memorandum of the numbers of the machines which he then took to his customer, who thereupon expressed his desire to purchase the machines on the terms stipulated by the defendants. The defendants, however, declined to go through with the sale. The proofs of the defendants went merely to the point that they had at no time entered into any agreement with the plaintiff to obtain a purchaser for these machines.

At the conclusion of the testimony, the trial court submitted the case to the jury charging, in part, as follows:

"Was there a definite agreement between plaintiff and defendant's firm whereby the latter promised to pay plaintiff a commission of five thousand dollars upon plaintiff producing a buyer who was ready, able and willing to purchase the three embroidering machines and the named accessories for one hundred thousand dollars, $75,000 cash and the balance within two years with interest at five per cent? That, ladies and gentlemen, as the proofs have turned, is the only basic issue in this case. Was there such an agreement between the parties to this case? If there was not, that is the end of the case;

you find for the defendant. If there was such an agreement, then you should find for the plaintiff, because there is no issue here as to whether or not a buyer was produced who was ready, able and willing. That is not contested. Plaintiff says that he produced Gutschmidt and there is no issue made of that. The only issue is, was there the brokerage contract?"

After the delivery of the charge to the jury, the administration of the customary oath to the court officers attending the jury, and the retirement of the jury to the jury room, counsel for the defendants made the following objection:

"Mr. Turtz: May I most respectfully object to that portion of the charge which states that the issue as to whether a buyer was produced on the terms and conditions on which the seller wanted to sell was not in issue * * * I think that the testimony was that all the terms and conditions were unknown."

■■ The trial court rightly disregarded this objection for several reasons, each of which would be controlling. The defendants' answer consisted of a denial of all of the allegations in the complaint in fourteen words. There was nothing in the complaint by which the denials in the defendants' answer might raise the issue urged in counsel's objection to the trial judge's charge, nor was there any such issue stated or even hinted at in the pretrial order. The alleged issue not having been raised in the pleadings or in the pretrial order, the trial court was therefore not under any duty to charge the jury with respect to it. The defendants, moreover, failed "either before or at the close of the evidence * * * to file written requests that the court instruct the jury on the law as set forth in the requests," in line with the opening sentence of *Rule* 3:51. This provision of the rule incorporates the long established practice in this State, *Levenson v. Erxleben,* 135 *N. J. L.* 127 (*E. & A.* 1946). Nor did the defendants comply with the further provisions of this rule that

"No party may urge as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■■■■■■■■■■■■

■ The defendants' objection to the charge followed the swearing of the court officers and the retirement of the jury to the jury room and therefore came too late. The defendants contend, however, that they were not tardy in their objection because of the final provision in the rule that

"Opportunity shall be given to make the objection out of the hearing of the jury."

This provision of the rule does not mean that the jury need retire while the objection to the charge is made. Ordinarily it is made with counsel and a court stenographer at the bench while the jury is still in the box, though the trial court may, of course, direct the jury to retire if the objections to the charge and the argument thereon promise to be prolonged. But this is far different from seeking to make an objection to the charge after the court officers who are to attend the jury have been sworn and the jury has retired to consider its verdict. From then on the jury should not be disturbed or be recalled into court, except for impelling reasons to prevent a miscarriage of justice, until it is ready to render its verdict or to otherwise communicate with the trial judge to report its desire for further instructions or its inability to agree on a verdict or similar matters.

■ The main contention of the defendants is that a corporation, the charter of which has been forfeited for the non-payment of taxes, may not during the period in which its charter is forfeited exercise any of its corporate powers such as entering into contracts or commencing and maintaining any actions thereon, even if its corporate franchise is subsequently restored by its compliance with the applicable statutory provisions. The debatable statutory provisions are *R. S.* 54:11-2 and 54:11-5. *R. S.* 54:11-2 provides that on receiving from the state tax commissioner a list of all the corporations which have failed for two years to pay the taxes against them under any law of this State on or before the first Monday in January in each year,

"The Governor shall forthwith issue his proclamation declaring under this title and chapter, that the charters of these corporations are repealed, and all powers conferred by law upon them shall thereafter be inoperative and void."

but *R. S.* 54:11–5 provides:

"If the charter of a corporation organized under any law of this state has or shall have become inoperative or void, by proclamation of the governor or by operation of law, for nonpayment of taxes, the governor, by and with the advice of the attorney general, may, upon payment by the corporation to the secretary of state of such sum in lieu of taxes and penalties as to them may seem reasonable, but in no case to be less than the fees required upon the filing of the original certificate of incorporation, permit the corporation to be reinstated and entitled to all its franchises and privileges. Upon such payment the secretary of state shall issue his certificate entitling the corporation to continue its business and franchises."

If the language of *R. S.* 54:11–2, that "all powers conferred by law upon them shall thereafter be inoperative and void" were to be taken literally and without regard to other sections of the statutes, it would necessarily mean that such a corporation was at an end for all purposes. In that event it would require legislative action to revive such a corporation, thereby completely nullifying the effect of *R. S.* 54:11–5 above quoted, inasmuch as the power to create corporations reposes in the Legislature and not in the executive branch of the government; see Article IV, Section 7, paragraph 11 of the Constitution of 1844, and Article IV, Section 7, paragraph 9 of the Constitution of 1947, where it is provided in identical language that:

"The Legislature * * * shall pass general laws under which corporations may be organized and corporate powers of every nature obtained, subject, nevertheless, to repeal or alteration at the will of the Legislature."

If, on the other hand, the effect of the Governor's proclamation of repealer is merely to suspend the powers of the corporation until it has complied with the provisions of *R. S.* 54:11–5, there is no occasion for resort to legislative action

to revive a corporation. Any view of *R. S.* 54:11–2 which did not treat the corporation as merely in abeyance would clearly render *R. S.* 54:11–5 unconstitutional as an invasion of the legislative province. We should adopt that construction which will best give effect to the entire legislative scheme. Not only does *R. S.* 54:11–5 speak of the corporation as being "reinstated and entitled to all of its franchises and privileges," but in transferring to a receiver appointed at the instance of the attorney general the intangible assets of the corporation for sale, *R. S.* 54:11–8 expressly provides that "no injunction theretofore issued or any forfeiture of the charter of the corporation shall be held to exempt it from compliance with the order of the court." This provision constitutes clear proof that it was not the legislative intent that the Governor's proclamation of repealer should absolutely destroy the corporation, for otherwise the corporation would not have the power to carry out the order of the court.

The object of these statutes being solely the raising of revenue for the State (the police aspects of the situation being covered by separate statutory provisions hereinafter referred to) it would be inequitable to permit third persons, such as the defendants here, who had dealt with the corporation in the period when its charter had been forfeited to defend suits against them on this ground after the corporation had complied with *R. S.* 54:11–5 and it had been reinstated as a corporation and entitled to all its franchises and privileges. In good conscience the defendants, who are strangers to the dealings between plaintiff and the State, should not be allowed to take advantage of the plaintiff's default in paying its taxes to escape their own obligations to the plaintiff, when its default has been cured by its subsequent compliance with the statutory requirements.

Nor does this view leave the State without adequate remedies against a corporation that persists in exercising its corporate powers despite the Governor's proclamation of repealer for the nonpayment of taxes. *R. S.* 54:11–3 provides that "Any person who shall exercise or attempt to exercise any powers under the charter of any such corporation after such

proclamation shall have issued shall be guilty of a misdemeanor." By *R. S.* 54:11-6, after a corporation has failed to pay its taxes for two years and the state tax commissioner has reported the corporation to the Governor, the attorney general may proceed against such corporation by petitioning for the appointment of a receiver or otherwise. By *R. S.* 54:11-7 there may be a decree in such proceedings for the taxes due and execution may issue thereon. By *R. S.* 54:11-8 if there is no property within the State that may be sold on such execution, the court may direct an assignment of the intangible assets of the corporation to the receiver appointed by the court.

While the sections of the Revised Statutes under consideration have never been construed by a court of last resort in this State, they have been passed upon by the courts of other states, *Sinnott v. Hanan,* 214 *N. Y.* 454, 108 *N. E.* 858 (1915); *Held v. Crosthwaite,* 260 *F.* 613 (*C. C. A.* 2d (1919)), and identical or similar statutes have been passed upon also in other jurisdictions, *Lyons v. Texorado Oil & Gas Co.,* 91 *S. W.* 2d 375 (*Tex. Civ. App.* 1935); *Hibernia Securities Co. v. Morey,* 23 *Cal. App.* 2d 482, 73 *P.* 2d 939 (1937); *Watts v. Liberty Royalty Corp.,* 106 *F.* 2d 941 (*C. C. A.* 10th 1939); *Wax v. Riverview Cemetery Co.,* 24 *A.* 2d 431 (*Del. Super.* 1942); *Dominion Oil Co. v. Lamb,* 119 *Colo.* 62, 201 *P.* 2d 372 (1949), uniformly holding that a reinstatement of a repealed charter relates back to the date of the proclamation of repealer and validates corporate action taken in the interim.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.