114 N.J. Super. 88 (1971)
274 A.2d 845
JOSEPH E. HIGI, PLAINTIFF,
v.
ELM TREE VILLAGE, A CORPORATION OF THE STATE OF NEW JERSEY; ESTATE OF EARL E. EBY, DECEASED; LEONARD G. BROWN AND DOROTHY M. GEIGER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 4, 1971.
*89 Mr. Herman Kapp for plaintiff (Messrs. Kapp and Finkel, attorneys).
Mr. Ralph N. Solodar, attorney for defendant.
HERBERT, J.S.C.
Plaintiff is one of the victims of defendant Leonard Brown. In March of 1966 he was induced by Brown to convey real estate at 415 Prospect Street, East Orange, to defendant Elm Tree Village, a corporation which Brown controlled. A little later plaintiff bought and paid for the real estate at 409 Prospect Street, East Orange, but at Brown's persuasion took title in the name of Elm Tree Village. Brown acted as plaintiff's attorney in these transactions. At the time plaintiff thought Brown was his friend and an honest lawyer.
This suit is for relief against the consequences of the fraud perpetrated by Brown. No appearances were entered in this action by Brown or by Elm Tree Village. After defaults were entered against those defendants and proofs were taken, judgment in this cause was entered on September 15, 1970 transferring title of the two properties from defendant Elm Tree to plaintiff. The question now presented is whether plaintiff has recovered title subject to mortgages purportedly placed on the real estate by Elm Tree Village while the record title stood in the name of that corporation, or are the mortgages in question invalid because of Elm Tree's loss of corporate standing at a date earlier than the date of any of the mortgages? Plaintiff now moves for judgment declaring the mortgages invalid and takes the position that the essential facts are undisputed.
There are three mortgages in question. Two are dated April 17, 1967 and one is dated December 4, 1968. Each one has the appearance of being the corporate act of Elm Tree Village. Each was signed by defendant Brown as president and the defendant Geiger as secretary. In all three documents the mortgagee is designated: "Estate of Earl E. Eby, Helen P. Maguire and Harold A. Chapell, Executors *90 * * *." More than three months before the earliest of the mortgages the charter of Elm Tree Village was repealed on January 3, 1967 by proclamation of the Governor for failure to pay taxes. N.J.S.A. 54:11-1 et seq. The Governor's proclamation naming Elm Tree and many other corporations is printed in L. 1967, vol. 1 at 1073 et seq. By authority of N.J.S.A. 54:11-2 the proclamation specifically declared "that all powers conferred by law upon such corporations and each of them, shall hereafter be inoperative and void." (at 1210).
The Eby estate was also a victim of Brown's crimes. Brown, Helen P. Maguire and Harold A. Chapell were co-executors and trustees under the Eby will until Brown's powers were suspended and Brown was thereafter, on March 15, 1967, removed from office. The claims of the Eby estate against Elm Tree Village are set forth in the affidavit of Morris J. Oppenheim which was filed in opposition to plaintiff's motion for judgment. I quote from that affidavit:
3. At the time of his decease, August 7, 1957, Earl E. Eby was the owner of 75 shares and Leonard G. Brown was the owner of 25 shares of the stock of Elm Tree Village, a corporation of New Jersey. Said stock represented all of the issued and outstanding stock of said corporation. After Eby's decease, Brown represented that he had an arrangement with Eby to purchase all of Eby's Elm Tree Village stock. Pursuant to such representations the executors agreed to sell and on or about December 15, 1969 assigned to Brown the estate's 75 shares of such stock for the price of $125,000.00 subject to court approval. The sale was eventually approved by the court by Order dated June 13, 1968.
4. At the time of his decease, Elm Tree Village was indebted to Earl E. Eby in the amount of $70,000.00 secured by a mortgage on its real estate. After Eby's decease, the executors loaned additional moneys to Elm Tree Village, namely: $15,000.00 on February 26, 1959, $10,000.00 on July 10, 1959 and $55,000.00 on August 4, 1960, it being intended that all such loans were to be secured by Mortgage on Elm Tree Village real estate. It was found, from the Final Account filed by Leonard G. Brown pursuant to Court Order, that the $70,000.00 Mortgage which Eby held had been discharged or cancelled of record subsequent to his decease and that the entire aggregate amount of the loans, $150,000.00 was unsecured, no mortgages having been made and executed as intended.
*91 5. Exceptions having been filed to Brown's Accounting, and on the basis of court proceedings, an Order was entered in the Essex County Court, Probate Division, dated September 20, 1967 which ordered (among other things) that as partial security there be executed and delivered to the executors of the Eby Estate, a first Mortgage on 415 Prospect Street, East Orange, N.J. in the amount of $27,500.00 and a second Mortgage on #409 Prospect Street, East Orange, N.J. in the amount of $10,000.00 subject to a first Mortgage in the amount of $12,000.00. In compliance with said Order there was executed by Elm Tree Village and delivered to the executors the Bond of Elm Tree Village dated April 17, 1968 in the amount of $10,000.00 together with a Mortgage on #409 Prospect Street, East Orange, N.J. of the same date to secure the said Bond and the Bond of Elm Tree Village in the amount of $27,500.00 dated April 17, 1967 secured by Mortgage on #415 Prospect Street, East Orange, N.J. of the same date to secure the said Bond.
6. The First Mortgage on #409 Prospect Street, East Orange, N.J., referred to in the preceding paragraph, was held by Albert L. Vreeland, Executor of the Estate of Barbara S. Rowland. The Mortgage having been defaulted, a suit was instituted in the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F 3252-67 for its foreclosure. Joseph E. Higi was not a party and made no application in that action. As a result of the foreclosure action, the mortgage held by Vreeland was paid. Also as a result, an Order was made by the Essex County Court, Probate Division dated December 4, 1968 which ordered that another Mortgage be made and executed by Elm Tree Village and delivered to the executors of the Estate in the amount of $12,500.00 as additional security for the corporation's indebtedness to the estate. In compliance with said Order, Elm Tree Village executed and delivered its Mortgage in that amount dated December 4, 1968.
If this case had to be decided by balancing the respective equities of plaintiff and the Eby estate, there perhaps would be factual questions requiring trial. I am not entirely certain about that. However, there is no question but that the charter of Elm Tree Village was repealed January 3, 1967 and has never been restored. A Governor's proclamation does not entirely destroy a corporation named in it, but merely suspends the powers of the corporation until there has been compliance with N.J.S.A. 54:11-5, which permits reinstatement upon payment of the delinquent taxes. J.B. Wolfe, Inc. v. Salkind, 3 N.J. 312 (1949). That case also announced the rule (at 320) that "a reinstatement of a *92 repealed charter relates back to the date of the proclamation of repealer and validates corporate action taken in the interim."
The charter of Elm Tree Village having been repealed before the dates of the mortgages in question, and never having been reinstated, can there be any basis for holding those mortgages valid? I think not. To hold them valid would be to regard a corporation which has lost its charter for nonpayment of taxes just as much an effective entity to create mortgage liens on real estate as a corporation in good standing. The policy considerations behind measures in aid of collection of taxes are plainly strong ones, and the Legislature has indicated an especially forceful policy in this particular area by making it a misdemeanor for anyone to "exercise or attempt to exercise any powers under the charter of any such corporation after such proclamation [by the Governor] shall have been issued * * *." N.J.S.A. 54:11-3.
When Elm Tree Village lost its charter it became subject to N.J.S.A. 14:13-4, which reads as follows:
All corporations, whether they expire by their own limitation or be annulled by the legislature or be otherwise dissolved, shall be continued bodies corporate for the purposes of prosecuting and defending suits by or against them, of enabling them to settle and close their affairs, of disposing of and conveying their property and of dividing their capital, but not for the purpose of continuing the business for which they were established.
The facts surrounding the giving of the purported mortgages to the Eby estate are described in the paragraphs quoted above from Oppenheim's affidavit. Nothing there appears to bring the mortgages within the scope of section 4. They were not for the purpose of winding up the affairs of Elm Tree Village, but rather appear to have been signed for the purpose of improving the position of the Eby estate by converting its existing claims against Elm Tree from an unsecured position to  at least in part  a secured one. Nor is there even a suggestion in the form of the three mortgages *93 that they or any of them were being given by trustees in dissolution of Elm Tree Village, as required by the statute then in effect. N.J.S.A. 14:13-5. Compare N.J.S.A. 14A:12-9(2).
Authorities from other jurisdictions support the conclusion that these mortgages must be regarded as nullities. Burgess Battery Co. v. Solar Light Co., 266 F. 368 (2 Cir.1920), a New Jersey corporation; New Hampshire Fire Ins. Co. v. Virgil & Frank's Locker Service, 302 F.2d 780 (8 Cir. 1962), a Missouri corporation; Shumway v. Earley, 56 Ariz. 124, 106 P.2d 194 (1940), an Arizona corporation; Chevron Oil Co. v. Clark, 291 F. Supp. 552 (D. Miss. 1968), a Mississippi corporation; Houston v. Utah Lake Land, Water & Power Co., 55 Utah 393, 187 P. 174 (1919), a Utah corporation. Also see 16A Fletcher, Cyclopedia of Corporations, (perm. ed. 1962), § 8137 at 306 and 307 (1962).
A secondary argument for the Eby estate is that action taken by the Essex County Court in relation to the Elm Tree-Eby mortgages gives them validity. That argument has no bearing on the particular question at hand. Though the mortgages were approved by it, the County Court could not restore the corporate powers of Elm Tree Village and, I am sure, assumed the existence of capacity to make mortgages as a prerequisite to carrying out the transactions being approved.
My ultimate conclusion is that the three purported mortgages from Elm Tree Village to the Eby estate are invalid and are to be cancelled of record. A judgment to that effect may be submitted.