Thomas E. KERNEY, Plaintiff-Appellant,

v.

David H. COBB, Ward Huddleston, Jr., Trustee for Charles M. McNeil, Bankrupt, and Citizens Union Bank, Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

June 29, 1983.

Permission to Appeal Denied by Supreme Court Oct. 11, 1983.

Thomas McKinney, Jr., Kingsport, for plaintiff-appellant.

James W. Bradford, Jr., and Lynn M. Lauderback, Kingsport, for David H. Cobb.

Ward Huddleston, Jr., Kingsport, for Ward Huddleston, Jr., as Trustee for Charles M. McNeil, Bankrupt.

Charles G. Robinette, Mount Carmel, for Citizens Union Bank.

## OPINION

FRANKS, Judge.

In this action, plaintiff sued to partition certain lands titled to Ridgefields Center Development Company, Inc., alleging he was a tenant-in-common with the defendants Cobb and McNeil.

The chancellor granted summary judgment and plaintiff has appealed.

The chancellor, in dismissing this action, said:

> There is no material issue of disputed fact before this Court. The Court finds in accordance with the proof submitted that at all times pertinent to this action, including on and after March 11, 1980, Plaintiff, as an officer, director and shareholder, and Defendants, DAVID H. COBB, WARD HUDDLESTON, Trustee for Charles M. McNeil, and CHARLES M.

McNEIL, did treat and hold out to the public at large and among themselves, Ridgefields Center Development Company, Inc., as a validly existing, properly chartered corporation in accordance with provisions of the Tennessee General Corporation Act, T.C.A., § 48–101, et seq. Specifically, the Court finds that after March 11, 1980, the corporation sold parcels of realty to third parties not participating in this litigation and performed acts consistent with the corporate identity of Ridgefields Center Development Company, Inc. The Court finds that the corporate charter of Ridgefields Center Development Company, Inc. was reinstated by the Secretary of State for Tennessee on September 10, 1982, and that such reinstatement relates back the date of revocation of the charter on March 11, 1980, and that all intervening actions during said period were ratified as validly existing corporate acts during said period.

The disputed corporation was incorporated on May 23, 1978. Plaintiff owned 50 per cent of the shares, McNeil owned 25 per cent and Cobb owned the remaining 25 per cent. The principal purpose of the corporation was to acquire, develop and sell real estate.

On March 11, 1980, pursuant to the provisions of T.C.A., § 67–2924, the Secretary of State revoked the charter of the corporation for failure to file corporate reports and pay franchise taxes. On August 30, 1982, Cobb learned the corporation's charter had been revoked and requested the corporation's accountant to prepare the necessary tax reports. On September 3, 1982, plaintiff filed this action and on September 10, 1982, the Commissioner of Revenue and Secretary of State reinstated the charter of the corporation upon payment by Cobb, the president of the corporation, of all taxes, penalties and filing of the requisite corporate forms.

In response to the motion for summary judgment, plaintiff's affidavit stated that he first became aware of the revocation of the corporate charter in August, 1982, and did not vote, approve or acquiesce in defendant Cobb's action in procuring the reinstatement of the corporate charter.

■ Plaintiff argues after a corporate charter is revoked for non-payment of franchise and excise taxes, a stockholder has a right to partition the real estate titled to the corporation and subsequent reinstatement of the corporate charter will not defeat a right of partition of the corporation's assets. Plaintiff relies on *Bland Co. v. Knox Con. Prod.,* 207 Tenn. 206, 338 S.W.2d 605 (1960), as authority for this position.

In *Bland,* the corporate stock was wholly owned by Jesse A. Bland, who died intestate in March of 1956. The corporate charter had previously been revoked for failure to file corporate reports and pay taxes. The issue was whether a suit could be maintained in the name of the corporation. The Supreme Court found an absence of corporate existence, which would allow maintenance of the suit by the heirs of the deceased; however, in *Bland* there had been no reinstatement of the corporate charter.

In the instant case, the charter was revoked and reinstated under T.C.A., § 67–2924, which provides, in pertinent part:

The commissioner of revenue is empowered to certify to the secretary of state the name of any corporation which fails or refuses to file any statement or report or to pay any fee or tax herein required. . . . Thereupon the charter of such corporation or its domestication in Tennessee shall stand as automatically revoked and the secretary of state shall note such revocation upon his records. At any time after date of revocation such charter may be reinstated upon the filing of all reports and the payment of all fees, taxes, penalty and interest due the state, provided, however, the title has not been taken by another corporation, and further provided that proof be furnished sufficient to the commissioner that no third party will be injured by such reinstatement.

While some states specifically provide by statute that reinstatement of a revoked corporate charter will relate back to the date

of revocation and validate all acts of the corporation in the interim, *see* Annot., 13 A.L.R.2d 1220 (1950), our corporation act is silent as to the effect of reinstatement. The majority view is that while performance of corporate acts during forfeiture of a corporation for failure to pay tax is without authority, subsequent reinstatement of the charter will validate interim acts as those of an existing corporation. *See e.g., Cloverfields Imp. Association, Inc. v. Seabreeze Properties, Inc.,* 280 Md. 382, 373 A.2d 935 (1977); *Frederic G. Krapf & Son, Inc. v. Gorson,* 243 A.2d 713 (Del.1968).

■ We believe it was the intent of the legislature in providing for reinstatement of the corporate charter under these circumstances to validate the corporation's privileges and existence from the date of revocation.

■ Since third parties purchased lots during the interval, we adopt the following:

The object of these statutes being solely the raising of revenue for the State . . . it would be inequitable to permit third persons, such as the defendants here, who had dealt with the corporation in the period when its charter had been forfeited to defend suits against them on this ground after the corporation had complied with [the statute] and it had been reinstated as a corporation and entitled to all its franchises and privileges.

*J.B. Wolfe, Inc. v. Salkind,* 3 N.J. 312, 70 A.2d 72, 13 A.L.R.2d 1214, 1219 (1949).

■ Plaintiff also argues the president of the corporation did not have authority to file the reports and pay the delinquent taxes. In the case of *State ex rel. Shriver v. Tenn. Land Etc.,* 585 S.W.2d 608 (Tenn. 1979), the court addressed in a different context the issue of who may seek reinstatement of a corporate charter and said:

We think the Legislature clearly intended that reinstatement would be available only through persons authorized to act for the corporation whose charter was revoked.

585 S.W.2d at 610.

In the instant case, by resolution of the corporation dated May 23, 1978, Cobb, as well as McNeil and Kerney, were authorized to draw checks from the corporate account and therefore pay debts of the corporation. The reinstatement of the corporate charter involved paying the corporate debts and filing reports, which were required by law. The corporation's president acted within his authority in paying the corporate debts, which resulted in reinstatement of the corporate charter.

■ Plaintiff further argues the corporate charter should not have been reinstated because there was not sufficient evidence that third parties would not be injured, as required by the statute. However, the plaintiff has not shown any third parties were, in fact, injured. We find this argument to be without merit.

■ Finally, plaintiff argues that the court abused its discretion in denying his motion for a continuance on the date the summary judgment was heard in order to ascertain additional facts. The matter of granting a continuance is in the sound discretion of the trial judge and we will not reverse unless there is a clear showing of abuse. *Morrow v. Drumwright,* 202 Tenn. 307, 304 S.W.2d 313 (1957). The motion for summary judgment was filed on October 21st, and the hearing was conducted on December 10th. The record does not establish the chancellor abused his discretion in refusing to grant a continuance.

The judgment of the trial court is affirmed, with costs of the appeal assessed to plaintiff and his sureties.

PARROTT, P.J., and KIRBY MATHERNE, Special Judge, concur.

### ADDENDUM

A motion to consider additional facts has been filed, which is respectfully overruled.