OPINION OF THE COURT
Edward H. Lehner, J.
The issue now before me is whether the notice of lien filed by Precision Specialist Metal & Glass, Inc. (Precision) on February 4, 2000, when it was not in existence by reason of having been dissolved in 1990 by the New Jersey Secretary of State for failure to pay taxes and when it was not qualified to do business in New York, should now be declared valid in light of *655 the fact that it has recently been reinstated in New Jersey and qualified in New York.
The facts in the proceeding are stated in my prior decision dated October 16, 2001 (189 Mise 2d 528) in which I discharged the lien because of the aforesaid dissolution and nonqualification.
Precision has now moved to reargue because (i) on August 28, 2001 it was reinstated by the New Jersey Department of the Treasury, upon the consent of the New Jersey Secretary of State and Attorney General, who issued a certificate “authorizing it to continue business and resume the exercise of its functions,” and (ii) on November 9, 2001 it received a certificate from the New York Secretary of State authorizing it to do business here, which certificate was granted after the issuance of consent by the New York State Department of Taxation and Finance on November 7, 2001. Precision’s motion, since it was based on new facts, was converted at oral argument to an application for renewal.
Petitioner New Jersey Window Sales, Inc. (Sales) contends that since Precision did not exist when it filed the lien, the subsequent reinstatement and qualification did not have the effect of permitting “an invalid mechanic’s lien to spring to life” (affirmation of Edward A. Stein, dated Jan. 8, 2002, 6). Sales further maintains that under current New Jersey law the reinstatement is not retroactive and, in any event, New York law should determine the validity of the lien “as of the date it is filed” (id. ÍÍ 3).
With respect to New Jersey law, in J.B. Wolfe, Inc. v Salkind (3 NJ 312, 70 A2d 72 [1949]), Chief Judge Vanderbilt in interpreting the then existing statute relating to reinstatement, which contained no provision dealing with retroactivity, concluded in accordance with similar statutes in other states that: “a reinstatement of a repealed charter relates back to the date of the proclamation of repealer and validates corporate action taken in the interim” (3 NJ at 320, 70 A2d at 76). In setting forth a rationale for such conclusion, Judge Vanderbilt wrote:
“In good conscience the defendants, who are strangers to the dealings between plaintiff and the State, should not be allowed to take advantage of the plaintiffs default in paying its taxes to escape their own obligations to the plaintiff, when its default has been cured by its subsequent compliance with the statutory requirements.” (3 NJ at 319, 70 A2d at 76.)
*656 While the statute dealing with reinstatement was subsequently amended (NJ Stat Ann § 54:11-5), the wording of the current statute is substantially similar to that existing at the time of the decision in the aforesaid case.
The section dealing with reinstatement for failing to file annual reports (NJ Stat Ann § 14A:4-5 [7]) specifically provides that the “reinstatement relates back to the date of issuance of the proclamation revoking the certificate of incorporation * * * and shall validate all actions taken in the interim,” whereas the statute dealing with reinstatement after a prior failure to pay taxes contains no similar provision. However, contrary to the argument of Sales, this difference does not warrant a conclusion that the interpretation of the statute in the aforesaid case is not still good law. (See, Higi v Elm Tree Vil., 114 NJ Super 88, 91, 274 A2d 845, 848 [1971]; Malavasi v Villavecchia, 62 NJ Super 510, 514, 163 A2d 214, 216 [1960] [both of which cases concluded that reinstatement relates back to the date of the proclamation of repeal “and validates corporate action in the interim”].)
The law in New Jersey, as interpreted as aforesaid, is similar to the provisions of New York Tax Law § 203-a (7), which provides that upon reinstatement after dissolution for failure to pay taxes, the reinstated corporation “shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation, with the same force and effect as if such proclamation had not been made.” Thus, considering that New York follows a similar practice as New Jersey in validating corporate action during a period of dissolution, I find no public policy that should prevent our courts from giving full effect to the New Jersey law regarding the powers and rights of corporations organized there after reinstatement.
With regard to the failure of Precision to ever qualify to do business in New York until last November (although admittedly having done substantial business here for over a decade), it appears that it has been paying New York franchise taxes. In discussing the reason for requiring qualification, the Court in Lorisa Capital Corp. v Gallo (119 AD2d 99 [2d Dept 1986]) stated, “a corporation’s de jure existence is removed for the very purpose of securing compliance with the tax statute [and] [r]ecognition of de facto status would directly subvert the effectiveness of the sanctions for franchise tax delinquency, *657 removing all incentive for a dissolved corporation to seek reinstatement” (at 111). Indicative of New York law on this subject is the holding in De George v Yusko (169 AD2d 865 [3d Dept 1991]), that “a corporation, during its delinquency and until it receives retroactive de jure status, is essentially legally dead” (at 866-867 [emphasis supplied]; see also, St. James Constr. Corp. v Long, 253 AD2d 754, 755 [2d Dept 1998] [where it was noted that in interpreting Tax Law § 203-a (7) “the courts have held that corporate transactions which occurred during a period of dissolution are retroactively validated because the corporation’s status, and its corresponding powers, rights, duties, and obligations, have been reinstated nunc pro tunc”]; Propp v Chaya Amusement Corp., 155 AD2d 251, 251 [1st Dept 1989] [holding that a lease “entered into during the period of delinquency (was) retroactively validated, when the corporate defendant * * * paid the delinquent franchise taxes and was reinstated by the Secretary of State”]). The fact that Precision had never qualified to do business in New York, although it was paying taxes here, should not deprive it of the aforesaid benefits of retroactivity upon its receiving its qualification certificate.
In light of the foregoing, I find that upon qualifying after obtaining consent of the State Tax Commission by proving payment of all outstanding taxes, Precision retroactively had its filing of the mechanic’s lien validated. While Sales argues that Precision cannot upon qualifying cause an invalid lien “to spring to life,” the fact of the matter is that upon filing of the lien that otherwise was in accordance with the provisions of the Lien Law, a valid lien against the subject real property existed, which lien was subject to being extinguished only by proof of invalidity. While I originally declared the lien invalid for the reasons set forth in my above-cited opinion, that decision is recalled as the new developments require a finding that the lien is valid by reason of the retroactivity of the corporate actions referred to herein.
From a public policy standpoint, I agree with the above-quoted statement of Judge Vanderbilt that Sales, who is a “stranger to the dealings” between Precision and the State “should not be allowed to take advantage” of Precision’s corporate qualification delinquencies to escape its own obligation to Precision after Precision satisfied all statutory corporate obligations to the New Jersey and New York authorities. To do otherwise would result in a benefit to Sales which was not harmed by the prior failures of Precision to follow state *658 mandated corporate requirements, which the affected states have now forgiven.
Sales further argues that since Precision is now qualified to do business in New York, its failure to specify a New York address on the notice of lien violates Lien Law § 9 (1), which mandates that the lienor state in the notice “its principal place of business [in New York].” However, as I indicated in my prior opinion, I agree with the dicta of the court in Matter of Garden State Brickface Co. v Artcourt Realty Corp. (40 Misc 2d 712, 715 [Sup Ct, NY County 1963]), that the Lien Law does not prohibit a foreign corporation doing business here, but without a true New York address, from filing a mechanic’s lien, with a caveat that the lien specify an attorney upon whom service may be made in New York, which was done here.
Accordingly, the decision dated October 16, 2001 is recalled and the motion of Sales to summarily discharge the subject notice of lien is denied.