FAIRBANKS ARCTIC BLIND
COMPANY, Appellant,

v.

PRATHER & ASSOCIATES, INC.;
Douglas Prather; Photostealth Fabric
Company, Inc., Ltd., Appellees.

No. 2004–CA–001257–MR.

Court of Appeals of Kentucky.

Oct. 21, 2005.

Discretionary Review Denied by
Supreme Court Aug. 17, 2006.

Charles A. Taylor, Lexington, KY, for Appellant.

William C. Rambicure, Rambicure, Miller & Pisacano, P.S.C., Lexington, KY, for Appellee.

Before GUIDUGLI and TAYLOR, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION

HUDDLESTON, Senior Judge.

Fairbanks Arctic Blind Company was incorporated on November 12, 1990, for the purpose of manufacturing and selling hunting blinds. The corporation quickly turned its efforts to the research and development of a process to transfer photographs onto cloth in order to produce realistic camouflage fabric; Fairbanks referred to this as its "photo-identical process".

On May 11, 1993, Fairbanks and Douglas Prather entered into a contract in which Prather agreed to assist the corporation in developing and marketing its photo-identical process. However, prior to execution of the contract, the Secretary of State had administratively dissolved Fairbanks on November 1, 1991, for failing to file an annual report.[2] Fairbanks was not reinstated until February 9, 1998.

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Ky.Rev.Stat. (KRS) 271B.14–200 provides that the Secretary of State may administratively dissolve a corporation for any of the following reasons: (1) the corporation has not filed an annual report with the Secretary of

In February 1995, Prather resigned from Fairbanks and, according to the corporation, began using the photo-identical process as his own. So, in 1998, Fairbanks filed suit against Prather seeking damages for breach of contract since the 1993 contract stipulated that the corporation exclusively owned the photo-identical process.

On January 30, 2004, Prather moved, pursuant to Kentucky Rules of Civil Procedure (CR) 12, to dismiss Fairbanks' claim on the ground that, according to Kentucky Revised Statutes (KRS) 271B.14–210, a corporation that has been administratively dissolved is prohibited from carrying on any business except that which is necessary to wind up and liquidate its business.[3] Since Fairbanks had been administratively dissolved in 1991, Prather argued, it was prohibited from entering into the 1993 contract and thus the contract was null and void. Following an evidentiary hearing, Fayette Circuit Court granted Prather's motion and dismissed Fairbanks' claim with prejudice.

On appeal, Fairbanks cites Kentucky statutory law and what it describes as the majority rule in arguing that reinstatement of a dissolved corporation validates the actions it took during the interim dissolution period.

Some states have reinstatement statutes that specifically validate a dissolved corporation's interim acts.[4] In contrast, other states have reinstatement statutes that are silent regarding a dissolved corporation's interim acts. The majority rule among the latter group is that reinstatement validates a dissolved corporation interim acts. Fairbanks cites *J.B. Wolfe, Inc. v. Salkind*[5] as one of the leading cases adopting the majority rule. In that case, the New Jersey Supreme Court held that reinstatement of a dissolved corporation relates back to the date of dissolution and "validates corporate action taken in the interim."[6] The Court reasoned that

[t]he object of [corporate dissolution and reinstatement statutes] being solely the raising of revenue for the State ... it would be inequitable to permit third persons, such as the defendants here, who had dealt with the corporation in the

State within sixty days from the date the report is due; (2) the corporation has failed to maintain a registered agent or registered office in the Commonwealth; (3) the corporation has failed to notify the Secretary of State that the corporation's registered agent or registered office has changed, that its registered agent has resigned or that its registered office has closed; or (4) the corporation's time period set forth in its articles of incorporation has expired.

According to KRS 271B.14–210, once the Secretary of State has determined that one of the grounds set forth KRS 271B.14–200 exists the Secretary is to send a written notice to the corporation. The corporation has sixty days from the date of notice to correct any deficiency. If the corporation fails to do so, then the Secretary of State is to issue a certificate dissolving the corporation, which is sent to the corporation. Also, according to KRS 271B.14–210(3), while in dissolution, the corporation continues to exist "but may not carry on any business except that necessary to wind up and liquidate its business and affairs[.]" After the effective date of the dissolution, the corporation may apply for reinstatement. It must pay a reinstatement penalty, the current fee for filing a delinquent annual report and any taxes owed. If the Secretary of State is satisfied with the corporation's application, the Secretary will cancel the certificate of dissolution and execute and send to the corporation a certificate of existence.

3.  *See* note 2.

4.  *See* Annot., *Reinstatement of Repealed, Forfeited, Expired, or Suspended Corporate Charter as Validating Interim Acts of Corporation*, 42 A.L.R.4th 392 (1985).

5.  3 N.J. 312, 70 A.2d 72, 13 A.L.R.2d 1214 (N.J.1949).

6.  *Id.* at 76, 70 A.2d 72.

period when its charter had been forfeited to defend suits against them on this ground after the corporation had complied with [the reinstatement statute] and it had been reinstated as a corporation and entitled to all its franchises and privileges. In good conscience the defendants, who are strangers to the dealings between plaintiff and the State, should not be allowed to take advantage of the plaintiff's default in paying its taxes to escape their own obligations to the plaintiff, when its default has been cured by its subsequent compliance with the statutory requirements.[7]

Relying on the reasoning found in *J.B. Wolfe*, Fairbanks encourages us to adopt the majority rule.

Fairbanks also relies on Tennessee law in support of its argument. Tennessee's reinstatement statute, Tennessee Code Annotated § 48–24–203(c), provides that

[w]hen the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution, and the corporation resumes carrying on its business as if the administrative dissolution had never occurred.

In comparison, Kentucky's reinstatement statute, KRS 271B.14–220(3), provides that

[w]hen the reinstatement is effective, it shall relate back to and take effect as of the effective date of the administrative dissolution or revocation and the corporation shall resume carrying on its business as if the administrative dissolution or revocation had never occurred.

Both statutes are, Fairbanks observes, virtually identical. Moreover, Fairbanks points out that the Tennessee Court of Appeals, relying on *J.B. Wolfe*,[8] adopted the majority rule in 1983.[9] Inasmuch as our reinstatement statute and Tennessee's reinstatement statute are substantially the same, and since Tennessee has adopted the majority rule, Fairbanks urges us to follow suit.

In the alternative, Fairbanks contends that, given the language found in KRS 271B.14–220(3), common sense dictates that reinstatement validates a corporation's interim activities. Fairbanks urges us not to adopt Prather's interpretation since it would render much of the language found in KRS 271B.14–220(3) meaningless, contrary to the rules of statutory construction.

When we interpret a statute, we attempt to ascertain and effectuate the intent of the General Assembly.[10] We also construe the statute in such a way that, if possible, no part of it will be rendered meaningless or ineffectual.[11] We neither add to nor subtract from the statute. Neither will we interpret it in such a way as to produce an absurd result.[12]

Since this is an issue of first impression in the Commonwealth, we believe that *J.B. Wolfe* offers valuable guidance in construing Kentucky's reinstatement statute. In addition, we find the reasoning in *Joseph A. Holpuch Co. v. United States*[13] useful as well. In the latter case, Holpuch entered into a contract with the federal govern-

---

7. *Id.*

8. *Supra,* note 5.

9. *Kerney v. Cobb,* 658 S.W.2d 128, 131 (Tn. App.1983).

10. KRS 446.080(1); *Commonwealth v. Reynolds,* 136 S.W.3d 442, 445 (Ky.2004).

11. *Hardin County Fiscal Court v. Hardin County Board of Health,* 899 S.W.2d 859, 861 (Ky.App.1995).

12. *Commonwealth v. Reynolds, supra,* note 10, at 445.

13. 102 Ct.Cl. 795, 58 F.Supp. 560 (Ct. Cl. 1945).

ment to do extensive construction work for the Veterans' Administration. Later, the government's contracting officer determined that Holpuch would not be able to complete the work on time, so he reformed the contract. Holpuch sued the United States in the Court of Claims for breach of contract. The government moved for dismissal and argued that, at the time Holpuch negotiated the contract, it had been administratively dissolved for failing to pay franchise taxes to the State of Illinois and consequently was prohibited from conducting any business, including contract negotiations. Thus, the United States contended, the contract was null and void.[14] Although the Court of Claims ultimately dismissed Holpuch's suit, it rejected the government's argument noting that Holpuch had been reinstated:

> [W]e are of opinion that the decree vacating the dissolution decree was intended to put the plaintiff corporation in the same situation as it would have been in had it paid its franchise taxes when due. This is because the decree vacating and setting aside and holding for naught the former decree was predicated on the fact that the taxes in default had been paid and the penalties had been paid for failure to pay them when due. Had the taxes been paid when due, there would have been no basis for the entry of the dissolution decree. Their subsequent payment, together with the payment of penalties for non-payment when due, removed the reason for the dissolution and put the corporation in the same situation it would have been in had the taxes been paid when due.
>
> . . .
>
> So when [the State of Illinois] accepted payment of taxes in default, together

with penalties, and set aside the dissolution decree, we think it intended to validate the exercise of the corporate franchise in the years for which the taxes were paid.

. . .

[T]he defendant here [the United States] cannot complain; its rights were in nowise prejudiced thereby. Only the State levying the taxes is interested in the nonenforcement of contracts entered into without prior payment of them. The other contracting party is not injured thereby. If defendant has breached its contract with plaintiff, certainly it should not escape liability therefore because the corporation did not pay its taxes when due, where the State, in consideration of the payment of penalties, has forgiven the corporation therefor.[15]

When the General Assembly stated in KRS 271B.14–220(3) that reinstatement

> shall relate back to and take effect as of the effective date of the administrative dissolution . . . and the corporation shall resume carrying on its business as if the administrative dissolution . . . had never occurred[,]

we conclude, applying the rationale of *J.B. Wolfe* and *Joseph A. Holpuch*, that it intended for reinstatement to restore a corporation to the same position it would have occupied had it not been dissolved and that reinstatement validates any action taken by a corporation between the time it was administratively dissolved and the date of its reinstatement. Simply put, the General Assembly meant what it said, that upon reinstatement, it is "as if the administrative dissolution . . . had never occurred."[16]

---

14. *Id.* at 562.

15. *Id.* at 563.

16. KRS 271B.14–220(3).

Prather urges us to focus solely on the word "resume" found in KRS 271B.14–220(3) and construe the statute to disavow interim corporate activities. This would effectively redact the statute to read, "When the reinstatement is effective ... the corporation shall resume carrying on its business [.]" However, as noted above, we may not subtract language from a statute nor may we render any of its language meaningless, if we can avoid doing so. Since Prather's interpretation would do so, we decline to adopt it.

The judgment is reversed and this case is remanded to Fayette Circuit Court for further proceedings.

ALL CONCUR.