**Ed MARTIN Appellant,**

v.

**PACK'S INC.; Southeastern Construction, Inc.; and Jeff E. Collinsworth, Appellees.**

No. 2010–CA–001048–MR.

Court of Appeals of Kentucky.

July 29, 2011.

**482**

James M. Gary, Louisville, KY, for appellant.

John J. Ellis, Morehead, KY, for appellee.

Before THOMPSON and VANMETER, Judges; ISAAC,[1] Senior Judge.

*OPINION*

THOMPSON, Judge:

Ed Martin appeals the Rowan Circuit Court's granting of summary judgment in favor of Pack's Inc. We affirm.

On August 4, 2004, Pack's Inc. and Southeastern Construction, Inc. entered into a contract for the construction of a gas station at the Kroger grocery store in Morehead, Kentucky. Pack's, a commercial and residential construction company, was owned by Keith Pack, and Southeast-

---

1. Senior Judge Sheila R. Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

ern was owned by Martin and Jeff Collinsworth. The gas station project was completed by November 2004. When the project was completed, Pack's was owed $77,879.50 as final payment.

On November 9, 2004, Southeastern was administratively dissolved by the Kentucky Secretary of State's Office. After the dissolution of the company, Martin requested that Mr. Pack execute a waiver of the company's right to file a lien on the gas station project. He informed Mr. Pack that Kroger would issue the final payment on the gas station project after the execution of the waiver and that Martin would then forward Pack's their final payment.

Based on Martin's request, Mr. Pack executed the lien waiver and Martin executed a letter promising that Southeastern would forward Pack's final payment upon receipt of the money owed to Southeastern by Kroger. After Kroger made the remaining payment for its project, Martin did not forward the final payment to Pack's as the parties had agreed in their lien release agreement. Mr. Pack began communicating with Martin and Collinsworth to obtain payment and obtained their signatures on a payment schedule document in January 2006. The schedule required a $10,000 first payment to Pack's and then regularly scheduled payments until the balance was paid. Martin and Collinsworth made the first payment under the schedule but did not make any further payments.

On June 6, 2007, Pack's filed a civil action against Southeastern, Martin, and Collinsworth based on breach of contract for $74,555.81. On January 6, 2010, Pack's filed a motion for summary judgment arguing that it was entitled to a personal judgment against Martin and Collinsworth

because the parties reached an agreement after Martin and Collinsworth's company was dissolved. The defendants responded that they were not obligated to pay their outstanding debt because Pack's work was completed before the dissolution and, thus, any obligation would be owed by the defunct company.

On April 6, 2010, the trial court issued summary judgment in favor of Pack's, ruling that Martin and Collinsworth's conduct following their company's dissolution created personal liability for paying the outstanding debt to Pack's. The trial court ruled that Martin and Collinsworth were jointly and severally liable in the amount of $74,555.81, plus prejudgment interest of seven percent and post-judgment interest of twelve percent. This appeal followed.

■ Martin contends that the trial court's reliance on an unpublished decision of this Court was misplaced because he did not incur any new postdissolution debt unlike the parties in the unpublished case.[2]

The standard of review applicable to an appeal of a summary judgment is well established. An appellate court must decide whether the trial court correctly ruled that there was no genuine issue as to any material fact and that the moving party was entitled to a judgment as a matter of law. *Barnette v. Hospital of Louisa, Inc.*, 64 S.W.3d 828, 829 (Ky.App.2002). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id., quoting* CR 56.03.

---

**2.** Martin's brief contains similar versions of this argument on pages five and twelve. We address both arguments here.

Summary judgment should only be granted when it appears that it would be impossible for the non-moving party to produce sufficient evidence to succeed at trial. *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky.1985). Because summary judgments do not involve matters where there are disputed facts, we review the decision of the trial court *de novo* and, thus, without deference. *Kreate v. Disabled American Veterans*, 33 S.W.3d 176, 178 (Ky.App.2000).

The trial court cited *Forleo v. American Products of Kentucky, Inc.*, No. 2005–CA–000196–MR, 2006 WL 2788429 (Ky.App. 2006), in finding that Martin and Collinsworth were liable for paying Pack's.[3] In *Forleo*, the Court held that shareholders, officers, and directors of a dissolved corporate entity can be held personally liable for non-winding up debts incurred after the dissolution. *Id.*

However, Martin contends that, unlike the facts in *Forleo*, he did not incur any new debt for the dissolution of Southeastern; rather, his subsequent actions reflected the recognition of a debt that preexisted the dissolution of his company. Therefore, he contends that the circumstances in *Forleo* are dissimilar to his case and, thus, could not be applied to find him personally liable to Pack's.

Although he believes the facts in *Forleo* are dissimilar to his case, Martin's agreement to pay Pack's the final payment constituted a new debt. Before Southeastern was dissolved, it contracted with Pack's to construct a gas station at a Kroger's grocery store, and Southeastern was solely liable to pay Pack's upon completion. When Southeastern dissolved, Martin requested and obtained Pack's waiver of its right to file a lien upon the property for the purpose of securing its right to collect its final payment. This agreement became enforceable as a new contract and debt obligation.

 Our case law provides that a material alteration in the terms of an existing agreement cannot be enforced unless a consideration for the change enures to the party whom the new agreement is being enforced against. *Pool et al. v. First Nat. Bank of Princeton*, 287 Ky. 684, 155 S.W.2d 4, 6 (1941). *Consideration* is defined as a benefit conferred to a promisor or a detriment incurred by a promisee. *Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky.App.2000). A benefit occurs when the promisor, in exchange for a promise, obtains a legal right to which he was not otherwise entitled. A detriment occurs when the promisee, in exchange for the promise, waives a right to which he was otherwise entitled to exercise. *Id.*

Martin could rely on the first agreement to deny personal liability if that agreement was the only exchange the parties made during their relationship. However, Pack's, in exchange for waiving its right to file a lien, and Martin, in exchange for agreeing to pay Pack's, executed an agreement that permitted Martin to receive money from Kroger for the completion of the gas station. Thus, Pack's waived its right to file a lien so that Martin could obtain payment from Kroger. This lien-waiver agreement was for new consideration by both parties and, thus, was enforceable against Martin as a post-dissolution incurred debt.

Martin contends that the trial court's reliance on *Forleo* was improper because

---

**3.** Kentucky Rules of Civil Procedure (CR) 76.28(4)(c) permits the citation of unpublished opinions of the appellate courts of this Commonwealth rendered after January 1, 2003, if there is no published opinion that adequately addresses the issue before the court.

the unpublished opinion was in direct conflict with published case law. Martin argues that *Fairbanks Arctic Blind Co. v. Prather & Associates, Inc.*, 198 S.W.3d 143 (Ky.App.2005), is controlling published law on the issue and, thus, should have been applied without consideration of *Forleo* under CR 76.28(4)(c).

After reviewing the *Fairbanks* decision, we fail to see how it was applicable to the facts of the instant case. The *Fairbanks* decision simply holds that a company's reinstatement restores it to the "same position it would have occupied had it not been dissolved and that reinstatement validates any action taken by a corporation between the time it was administratively dissolved and the date of its reinstatement." *Id.* at 146. In the instant case, the *Fairbanks* decision has no application because Southeastern has not been reinstated in Kentucky. Thus, Martin remains personally liable for his own actions, not Southeastern.

◼ Martin contends that the trial court's granting of summary judgment was premature because he did not have an adequate opportunity for discovery. He argues that Pack's had not produced all of the requested documentation, including a copy of the original contract of the parties for the construction of the gas station. He further contends that no discovery was conducted regarding whether he owned a sufficient interest in Southeastern to be held personally liable to Pack's.

◼ A trial court can grant a summary judgment only after the litigants have been provided an ample opportunity to complete pretrial discovery. *Pendleton Bros. Vending, Inc. v. Com. Finance and Admin. Cabinet,* 758 S.W.2d 24 (Ky.1988). It is not necessary that litigants be allowed to complete discovery but only that they be granted sufficient time to complete discovery and then fail to produce any evidence to create a genuine issue of material fact. *Id.*

Pack's filed its complaint on June 6, 2007, Martin filed his answer on October 5, 2007, and the trial court issued summary judgment on April 6, 2010. The period between Martin's answer and the summary judgment was two and one half years. Yet, Martin failed to produce evidence of a genuine issue of material fact to preclude summary judgment, and his appellate discovery claims fall short as well. He had ample opportunity to obtain discovery and the specific discovery shortcomings, namely that his ownership interest in Southeastern and the gas station contract have no bearing on the outcome of this case. The fact remains that Martin's post-dissolution conduct created a new debt obligation in favor of Pack's, and he has failed to produce any material fact to bring this conclusion into doubt.

◼ Martin contends that the trial court failed to find that he was not authorized to act on behalf of his company when he entered the agreement. He argues that officers are not personally liable for their company's debts unless they act outside of their authority, which he asserts that he did not. Because the trial court did not find that he was unauthorized to enter the agreement with Pack's, he argues that he could not be held personally liable to Pack's.

◼ Generally, an officer, director, or shareholder, when acting as an agent of the corporation, is shielded from personal liability when acting within his authority to bind the corporation. *Young v. Vista Homes, Inc.,* 243 S.W.3d 352, 363 (Ky.App. 2007). However, the record clearly demonstrates that Martin's corporation was dissolved and, thus, did not provide him protection to conduct business on behalf of Southeastern because his authority was

limited by statute. *Fairbanks Arctic Blind Co.,* 198 S.W.3d at 143 (KRS 271B.14–210(3) is now codified at KRS 14A.7–020(3)).

Martin contends that the trial court erred by issuing summary judgment because he was shielded from personal liability pursuant to KRS 271B.14–050 and 271B.6–220(2).[4] With respect to KRS 271B.14–050, Martin contends that Southeastern was responsible for Pack's liability because his agreement with Pack's was for the purpose of winding up Southeastern's affairs. Thus, he argues that his personal conduct was still protected by his corporate status. Based on KRS 271B.6–220(2), Martin contends that his actions were generally shielded from personal liability pursuant to the statute.

KRS 271B.14–050 provides the following:

(1) A dissolved corporation shall continue its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

(a) Collecting its assets;

(b) Disposing of its properties that will not be distributed in kind to its shareholders;

(c) Discharging or making provision for discharging its liabilities;

(d) Distributing its remaining property among its shareholders according to their interests; and

(e) Doing every other act necessary to wind up and liquidate its business and affairs.

KRS 271B.6–220(2) provides that "[u]nless otherwise provided in the articles of incorporation, a shareholder of a corporation shall not be personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct."

While Martin contends that his actions were strictly limited to the purpose of winding up Southeastern, his actions exceeded the scope of activity envisioned by KRS 271B.14–050. In the instant case, after his company was dissolved on November 9, 2004, Martin solicited Pack's, created a new liability, and subsequently established a payment agreement with Pack's in 2006. It has long been held that the purpose of the winding up statute was to provide a party with the opportunity to liquidate a business in a reasonable time. *Holliday v. Cornett, Sheriff,* 224 Ky. 356, 6 S.W.2d 497, 498 (1928). In this case, Martin continued to reach agreements with Pack's in the years following his company's dissolution and established a ten-year payment agreement in 2006.

Under the facts of this case, Martin has produced no affirmative evidence how this conduct constituted winding up his business. A party "opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482 (Ky.1991). After Pack's presented evidence showing the circumstances of Martin's action required a finding of personal liability, Martin failed to present any affirmative evidence to show a genuine issue of material fact. Accordingly, the trial court's judgment was not in violation of KRS 271B.14–050.

Furthermore, we have previously addressed the essence of Martin's KRS

4. Martin's brief contains two essentially identical arguments regarding his winding up claim. The first argument is contained on pages five and six of his brief, and the second argument is contained on pages ten and eleven of his brief.

271B.6–220(2) claim. To reiterate, Martin cannot be shielded from personal liability by virtue of the statute, because his corporation was dissolved at the time of his actions. Therefore, KRS 271B.6–220(2) provides Martin no relief.

Martin argues that he cannot be individually liable in an amount in excess of his equity in the corporation at the time his ownership of the corporation terminated. He contends that he transferred all of his interest in Southeastern to Collinsworth at a substantial loss, subsequent to his dealings with Pack's and, thus, could not be individually liable to Pack's because he had no equity in the corporation.

▉ Notwithstanding Martin's argument, he has failed to cite where he preserved this argument by presenting the facts to the trial court. "It is well-settled that a trial court must be given the opportunity to rule in order for an issue to be considered on appeal, and the failure of a litigant to bring [a matter] to the trial court's attention is fatal to that argument on appeal." *Baker v. Weinberg*, 266 S.W.3d 827, 835 (Ky.App.2008). Accordingly, we will not address Martins argument because he did not present this argument to the trial court.

▉ Martin contends that the Rowan Circuit Clerk's Office's failure to timely mail his counsel a copy of the summary judgment prevented him from filing a motion to reconsider pursuant to CR 59.05. He contends that the clerk's office mailed the judgment to him eleven days after the judgment was entered. Thus, he argues that the clerk's error prevented him from filing a CR 59.05 motion.[5]

Assuming Martin is correct regarding the late mailing, he has failed to state what new facts he would have produced to the trial court to create a genuine issue of material fact to preclude summary judgment. As stated in *Hopkins v. Ratliff*, 957 S.W.2d 300, 301 (Ky.App.1997), a litigant cannot utilize a motion pursuant to CR 59.05 to raise arguments and introduce evidence that could and should have been presented to the trial court before the judgment was issued.[6] Therefore, we conclude that any mailing error was harmless because Martin has not stated what new evidence or arguments that he would have presented to the trial court which could not have been previously presented. *Id.*

Martin contends that the Rowan Circuit Clerk's Office's failure to timely mail his counsel a copy of the summary judgment prevented him from filing a motion to reconsider the trial court's award of interest to Pack's. However, Martin has failed to make specific arguments regarding what he would have presented to the trial court. Accordingly, we conclude any error was harmless.

For the foregoing reasons, the Rowan Circuit Court's granting of summary judgment is affirmed.

ALL CONCUR.

---

5. CR 59.05 provides that "[a] motion to alter or amend a judgment, or to vacate a judgment and enter a new one, shall be served not later than 10 days after entry of the final judgment."

6. *See James v. James*, 313 S.W.3d 17 (Ky. 2010), for a discussion of reinvesting the trial court with authority to modify a judgment after the expiration of the ten-day period in CR 59.05.